IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

EDDIE WAYNE GHOLSTON,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C14-2064

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    PRINCIPLES OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
        A.    Gholston's Education and Employment Background . . . . . . . . . . .  5
        B.    Gholston's Medical History  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

V.      CONCLUSIONS OF LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
        A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . .  11
        B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . .  13
              1.     RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
              2.     Fully and Fairly Developed Record . . . . . . . . . . . . . . . . .  21
              3.     Hypothetical Question  . . . . . . . . . . . . . . . . . . . . . . . . . .  22

VI.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

VII.    RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Eddie Wayne Gholston on October 7, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Gholston asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Gholston requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On January 6, 2012, Gholston applied for both disability insurance benefits and SSI benefits. In his applications, Gholston alleged an inability to work since June 24, 2008 due to having a bullet in his right leg and a left shoulder injury.[1] Gholston's applications were denied on April 2, 2012. On May 21, 2012, his applications were denied on reconsideration. On April 24, 2013, Gholston appeared appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Robert Milton Erickson for an administrative hearing.[2] Gholston and vocational expert Carma A. Mitchell testified

---

[1] Gholston previously filed an application for SSI benefits on August 4, 2008. This application was denied on January 21, 2009. He did not seek reconsideration of the denial of that application. On September 16, 2010, Gholston, for a second time, applied for SSI benefits. At this time, he also applied for disability insurance benefits. Both applications were denied initially on November 23, 2010. On January 27, 2011, both applications were denied on reconsideration. Gholston did not further appeal these applications.

[2] Gholston and his attorney appeared in Waterloo, Iowa. Judge Erickson presided over the hearing from San Francisco, California.

at the hearing.[3] In a decision dated June 25, 2013, the ALJ denied Gholston's claims. The ALJ determined that Gholston was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Gholston appealed the ALJ's decision. On August 8, 2014, the Appeals Council denied Gholston's request for review. Consequently, the ALJ's June 25, 2013 decision was adopted as the Commissioner's final decision.

On October 7, 2014, Gholston filed this action for judicial review. The Commissioner filed an Answer on December 15, 2014. On January 15, 2015, Gholston filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On February 13, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On February 23, 2015, Gholston filed a reply brief. On February 24, 2015, Chief Judge Linda R. Reade referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to:

---

[3] Vocational Expert Carma Mitchell appeared in Waterloo, Iowa.

"[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Gholston's Education and Employment Background

Gholston was born in 1974. He completed the tenth grade, and dropped out of school in the eleventh grade. While in school, he was enrolled in special education classes for English and math. Gholston has never completed a GED. At the administrative hearing, Gholston testified that he can "barely" read or write, and would have difficulty making change for a five dollar bill.

In the past, he worked as meat packer, flagger, industrial truck operator, restaurant dishwasher, and restaurant food preparer.

### B. *Vocational Expert's Testimony from April 24, 2013 Administrative Hearing*

At the hearing, the ALJ provided vocational expert Carma A. Mitchell with a hypothetical for an individual who can:

> frequently lift 10 pounds, can sit six hours in an eight-hour workday, but no more than one-half hour continuously. Never stoop, crawl or kneel[.] [W]ith the left minor upper extremity[, n]o more than frequent gross manipulations.

(Administrative Record at 75.) The vocational expert testified that under such limitations, Gholston could not perform his past relevant work, but could perform the following sedentary jobs: (1) document preparer, (2) order clerk, and (3) addresser. The ALJ provided the vocational expert with a second hypothetical for an individual who is able to:

> Frequent[ly] lift or carry 10 pounds, stand or walk . . . no more than two hours of an eight-hour workday, can -- as far as standing no more than five minutes continuously. Walking I'm going to say 20 minutes, sit six hours of an eight-hour workday, no more than one-half hour continuously. Never do the following, stoop, crawl or kneel, with the left minor upper extremity no more than occasional gross manipulation. The individual has to avoid concentrated exposure to dust, fumes or temperature extremes.

(Administrative Record at 76-77.) The vocational expert, again, testified Gholston could not perform his past relevant work under such limitations, but could perform the sedentary jobs of document preparer, order clerk, and addresser. In a third hypothetical, the ALJ added the following limitations to hypothetical number two: (1) the ability to perform simple, repetitive tasks, and (2) no interaction with the public. The vocational expert responded that the order clerk job would be precluded, but the document preparer and addresser jobs would remain.

Gholston's attorney also questioned the vocational expert. In particular, Gholston's attorney inquired:

> Q:     With respect to any of these poscions [(document preparer, order clerk, and addrésser)] would an individual be able to do the jobs if there were regular -- I'm going to say 30 percent of the time failings to maintain persistence, concentration and pace?
>
> A:     Okay, with that added limitation, no, I don't feel the person could sustain those jobs or any jobs on a full-time competitive basis.

(Administrative Record at 79.)

### B. Gholston's Medical History

On October 29, 2010, Gholston met with Sarah M. Douglas, ARNP, for a disability examination. Gholston's primary complaints were low back pain, left ankle pain, foot pain, right lower leg pain due to bullets, asthma, left shoulder pain, and depression. Douglas thoroughly reviewed Gholston's medical history as follows:

> [Gholston] states as a child he had an injury . . . breaking his left ankle, and there was hardware placed with rods and pins. He states he can't walk on level ground without pain. He has trouble going up and down stairs due to pain. He states he cannot lift over 50 pounds because of the left foot pain. He rates his pain as a 10/10. . . . His pain worsens with any walking, moving or standing in everyday use, and also cold weather makes it worse. He states nothing makes it better, but usually he will sit and keep it elevated. . . .
>
> [Gholston] also states he has right lower leg pain. When younger he had a bullet enter the tibia bone and it is lodged there. He also has BB's in the calf. He said his leg gets restless a lot and has pain. . . . His walking is uneven and he has loss of strength in both legs. He states when he was shot in the leg and he was in the hospital, they did not want to remove the bullet due to its location. He describes the pain as excruciating, that he is always in pain and it makes him cry.

[Gholston] also is complaining of lower back pain in the right flank area. He says it is hard to bend over, and he can hardly put on his underwear due to the pain and bending. He states he is unable to kneel, bend or squat at all. He describes it as a tight, tension, swelling type of pain. He has had no treatment regarding this pain and no further workup or evaluation regarding his back pain.

[Gholston] states that he has asthma and a lot of breathing problems. He is short of breath with walking. He states he can walk about two blocks when he gets short of breath and needs to rest. . . .

[Gholston] states he also has left shoulder pain, which started in 2007 when he was working at Tyson's. He went through workman's comp doctors. He did physical therapy and a series of injections in his shoulder. He states he had MRI and x-rays done, and they finally told him there was nothing wrong with his shoulder. He gets a lot of swelling and pain in that area. He states he is unable to carry or pick up anything with that arm. . . . He has a lot of muscle tightness and tension. [Gholston] states his left hand locks up on him a lot, and that he gets tingling down his left arm.

[Gholston] states he does have some mental limitations. . . . He gets depressed. He has not seen a psychiatrist ever for this problem.

(Administrative Record at 558-59.) Gholston also described his daily activities and functional limitations to Douglas as follows:

[Gholston] states he has trouble showering and dressing himself. It is a very slow process for him, because he is stiff in the mornings. He is unable to care for children. He does some cooking but only microwaving. He states he cannot do cleaning. He does not do grocery shopping, laundry, or yard work. He states he can drive but can't go long distances due to the pain. He is able to lift only ten pounds frequently. He

8

can stand for five minutes and then has pain, and he can only walk two blocks before developing pain and shortness of breath. He states he can sit for half an hour, that he has to move frequently to different positions due to pain. . . . He states he drops things, especially with his left hand. He would have trouble traveling due to pain. He is unable to stoop, kneel or crawl. He has difficulty with environments that have dust or fumes due to his asthma and shortness of breath.

(Administrative Record at 559.) Upon examination, Douglas diagnosed Gholston with left foot pain, right calf pain, right shoulder pain, shortness of breath with asthma and possible COPD, and symptoms of depression. Douglas recommended referrals to orthopedics for his foot and shoulder, pulmonary function testing, and a psychiatric evaluation. Douglas concluded that:

[Gholston] is able to lift ten pounds frequently. He can stand for only five minutes, walk about two blocks and sit for a half hour before developing severe pain. He has no limitations with speaking or hearing. He does have limitations handling objects due to his left shoulder pain and the potential to drop things. He is unable to stoop, kneel or crawl. He is also unable to work in environments with dust, fumes or temperature hazards due to his shortness of breath problems.

(Administrative Record at 560.)

On November 23, 2010, Dr. John May, M.D., reviewed Gholston's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Gholston. Dr. May determined that Gholston could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also found that Gholston could frequently climb ramps and stairs, but never climb ladders, ropes, or

scaffolds. Dr. May further found that Gholston could occasionally balance, stoop, kneel, crouch, and crawl. Dr. May opined that Gholston should avoid constant overhead reaching with his left upper extremity. Dr. May found no visual, communicative, or environmental limitations. Dr. May concluded that "[t]he information in file is generally consistent. There are some credibility issues of his allegations due to lack of treatment. However, he is capable of the limitations outlined in this RFC."[4]

On March 27, 2012, at the request of DDS, Gholston met with Dr. Kyle P. Christiason, M.D., for a disability examination. Gholston's chief complaints were left ankle pain and right lower leg pain. Upon examination, Dr. Christiason diagnosed Gholston with limb pain and intermittent asthma. Dr. Christiason concluded that:

> [Gholston] reports ability to stand no more than one hour
> before he needs to sit due to leg pain bilaterally. He reports
> prolonged sitting causes stiffness. He reports difficulty using
> his hands, especially in colder weather. . . . Estimated ability
> to walk less than one block per [Gholston]. Cold weather
> aggravates pain diffusely including left arm, both legs.

(Administrative Record at 621.)

On September 28, 2012, at the request of his attorney, Gholston met with Vicki Boling, ARNP, for a psychiatric evaluation. Boling noted that in the past, Gholston had difficulties with mood disorder. Boling further noted that Gholston "has had chronic pain since he was a teenager from numerous injuries. . . . He has had anger problems in the past, but now is just frustrated with his physical limitations."[5] With regard to treatment history, Boling found that Gholston "is presently on no medications and has never had

---

[4] Administrative Record at 569.

[5] *Id.* at 630.

psychiatric medication before."[6] Upon examination, Boling diagnosed Gholston with major depressive disorder, PTSD, pain disorder, and personality disorder. Boling recommended medication as treatment.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Gholston is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

---

[6] Administrative Record at 630.

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Gholston had not engaged in substantial gainful activity since June 24, 2008. At the second step, the ALJ concluded from the medical evidence that Gholston had the following severe impairments: left shoulder tear, status post gunshot wound to the right lower extremity, obesity, left foot/ankle pain, affective disorder, anxiety disorder, and polysubstance abuse. At the third step, the ALJ found that Gholston did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Gholston's RFC as follows:

> [Gholston] has the residual functional capacity to perform sedentary work . . . except for the following limitations: [Gholston] can lift and/or carry 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday with regular breaks and standing for no more than five minutes continuously and walking for no more than 20 minutes continuously; he can sit for six hours out of an eight-hour workday with regular breaks and sitting for no more than 30 minutes continuously; he can never stoop, crawl, or kneel; he can occasionally perform gross manipulation with the left upper extremity; he must avoid concentrated exposure to dust, fumes, or temperature extremes; and he is limited to performing simple repetitive tasks with no more than occasional interaction with the public and co-workers.

(Administrative Record at 23.) Also at the fourth step, the ALJ determined that Gholston was unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Gholston could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Gholston was not disabled.

## B. Objections Raised By Claimant

Gholston argues that the ALJ erred in three respects. First, Gholston argues that the ALJ's RFC assessment is flawed because it is not supported by substantial evidence.

Second, Gholston argues that the ALJ failed to fully and fairly develop the record in this matter. Lastly, Gholston argues that the vocational expert's testimony is flawed because it is not supported by substantial evidence.

### 1. RFC Assessment

Gholston argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. First, Gholston argues that the ALJ's finding of polysubstance abuse as a severe impairment is not supported by the record. Specifically, Gholston asserts that "the clear errors of determining smoking pot to be a severe impairment, when no evidence supports that determination, exemplifies the ALJ's several failures in this case. While adding an impairment that is not medically supported, but one that often carries negative connotations with it, the ALJ then minimized other impairments that were supported."[7] Next, Gholston argues that the ALJ failed to properly consider his level of obesity. Gholston points out that the ALJ focused on his weight of 255 pounds in 2009, instead of focusing on his weight of 279 pounds in 2010, which indicates more significant impact on his physical impairments. Gholston further argues that the ALJ in determining his RFC ignored his difficulties with intellectual functioning. At the administrative hearing, Gholston testified that he can "barely read." Thus, Gholston concludes that "[t]he ALJ should have developed the record on literacy and intellectual functioning, and he did not. Remand for literacy testing and IQ testing is the most appropriate remedy."[8] Gholston also contends that the ALJ's RFC is based solely on medical records pertaining to his left shoulder problems, and implicitly argues that the ALJ ignored the other medical evidence in the record. Finally, Gholston argues that in determining his RFC, the ALJ improperly weighed the evidence of Sarah Douglas, ARNP, a consultative examining source.

---

[7] Gholston's Brief (docket number 10) at 12-13.

[8] *Id.* at 15.

Similar to his argument that the ALJ's RFC assessment is flawed and not supported by substantial evidence, Gholston also argues that the ALJ failed to fully and fairly develop the record in this case. Specifically, Gholston argues that the ALJ failed to fully and fairly develop the record with regard to consultative examination reports. Gholston maintains that the consultative examination reports contained in the record are flawed because they were performed by non-acceptable medical sources, a nurse and a nurse practitioner. Gholston concludes that this matter should be remanded for a new consultative examination.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order

that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Turning to Gholston's arguments as to the ALJ's RFC assessment, his first contention that the ALJ's finding of polysubstance use as a severe impairment reflects negatively on the ALJ's RFC assessment and is not supported by substantial evidence in the record is without merit. Medical records from 2009, 2011, and 2012 all indicated that Gholston regularly used marijuana.[9] Moreover, in his testimony during the administrative hearing, Gholston admitted that he lost his driver's license due to his marijuana use.[10] Under such circumstances, the Court finds that there is ample evidence in the record for the ALJ to determine that Gholston's marijuana use was a severe impairment. The Court further finds that such a determination does not detract from the ALJ's RFC assessment for Gholston.

Next, the Court will address Gholston's argument that the ALJ failed to properly consider his obesity in making the RFC determination. Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically

---

[9] *See* Administrative Record at 526, 531, 539 (noting Gholston's marijuana use in 2009); 592 (noting Gholston's marijuana use in 2011); 631 (noting that Gholston admitted using marijuana several times per month); 634 (noting that Gholston's probation officer urged him to seek substance abuse treatment, but Gholston refused).

[10] *See* Administrative Record at 51 (Gholston stated that he lost his driver's license "[d]ue to using marijuana.").

determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*.

In addressing Gholston's obesity, the ALJ stated:

> I have considered the potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular system and the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.

(Administrative Record at 22.) The ALJ further noted that:

> As indicated above, I find [Gholston's] obesity is a severe impairment. [Gholston's] weight was documented in the medical records at 255 pounds at a height of 75" (Exhibit 11F, p. 7). [Gholston's] body mass index (BMI) was 31.87. [Gholston's] weight, including the impact on his ability to ambulate as well as his other body systems, has been considered within the functional limitations determined herein.

(Administrative Record at 26.)

Here, Gholston correctly points out that the ALJ's BMI calculation was wrong due to using an incorrect height in the BMI calculation. Gholston is 72 inches tall, not 75 inches tall. Thus, using the correct measurements, Gholston's BMI should have been approximately 34. Furthermore, had the ALJ used Gholston's weight in 2010, which was 279 pounds, his BMI would have been even higher. Nevertheless, under all of these calculations Gholston would be considered obese. Moreover, Gholston offers no argument that his obesity causes any work-related limitations. Gholston points to no evidence in the

17

record where any medical source, doctor or otherwise, placed work-related limitations on him due to his obesity. In *McNamara v. Astrue*, 590 F.3d 607 (8th Cir. 2010), the Eighth Circuit Court of Appeals determined that "[g]iven that neither the medical records nor McNamara's testimony demonstrate that her obesity results in additional work-related limitations, it was not reversible error for the ALJ's opinion to omit specific discussion of obesity." *Id.* at 612 (citing *Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004)). Because the ALJ considered and addressed Gholston's obesity in making his RFC determination, albeit at a lower BMI, and there is no evidence in the record that Gholston's obesity results in work-related limitations, the Court concludes that the ALJ adequately considered Gholston's obesity in making his RFC determination. *See Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) ("'We have held that an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.' *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).").

With regard to Gholston's claim that the ALJ failed to properly consider his intellectual functioning in making the the RFC determination, the Court finds no merit to this argument. In his decision, the ALJ addressed Gholston's intellectual functioning as follows:

> [Gholston's] Representative argued that [Gholston] had cognitive limitations; however [Gholston's] treaters at Blackhawk-Grundy Mental Health make no mention of such limitations and [Gholston's] school records reveal poor grades due to repeated absences rather than cognitive limitations.

(Administrative Record at 29.) The Court finds no error in the ALJ's consideration of Gholston's intellectual functioning. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

18

Gholston's suggestion that the ALJ's RFC is based solely on medical records pertaining to his left shoulder problems is wholly without merit. In his decision, the ALJ thoroughly reviewed and considered Gholston's entire medical history and treatment in making his RFC determination. In addition to considering Gholston's left shoulder pain and limitations, the ALJ also considered and discussed Gholston's lower extremity pain, back pain, asthma and breathing problems, mood and anxiety disorders, obesity, and intellectual functioning.[11]

Finally, turning to Sarah Douglas' consultative examination, the Court acknowledges that as a nurse practitioner, Douglas is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Douglas is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any

---

[11] *See* Administrative Record at 25-29 (providing a thorough and comprehensive discussion of Gholston's overall medical history and treatment).

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Douglas' opinions and gave her opinions "some" weight. Specifically, the ALJ stated:

> Based on her findings Ms. Douglas opined [Gholston] was able to lift ten pounds frequently, stand for only five minutes, walk for about two blocks, sit for 30 minutes, he was unable to stoop, kneel, or crawl[,] he was unable to work in environment[s] with dust, fumes, or temperature hazards, and he was limited in handling objects. Although the opinions of Ms. Douglas are generally supported by the evidence of record and [Gholston's] reported activities of daily living I note a nurse practitioner is not an acceptable medical source entitled to be given the same weight as a qualifying medical source opinion[.] . . . Additionally, although the limitations assessed by Ms. Douglas are reasonable they do detail what [Gholston] is capable of performing despite his impairments. Accordingly, this opinion is given less than significant weight.

(Administrative Record at 27.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Douglas' opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for attributing "some" weight, but "less than significant" weight to Douglas' opinions. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").

In conclusion, having reviewed the entire record, the Court concludes that the ALJ properly considered Gholston's medical records, observations of treating physicians, and Gholston's own description of his limitations in making the RFC assessment for

Gholston.[12] *See Lacroix*, 465 F.3d at 887. Accordingly, the Court determines that all of Gholston's arguments concerning the ALJ's RFC determination are without merit.

## 2. *Fully and Fairly Developed Record*

The Court will now address Gholston's argument regarding whether the ALJ fully and fairly developed the record as to a proper consultative examination. Gholston contends that remand is necessary because neither consultative examination in the record was performed by an acceptable medical source. Gholston's contention is incorrect. The record demonstrates that Dr. Christiason, an acceptable medical source, examined Gholston.[13] In his brief, Gholston argues that "[a]lthough the ALJ refers to the other [consultative examination] as the Dr. Christiason assessment[,] the report clearly states that it was dictated, or recorded, by nurse Akkerman at 9:54 am, and first signed by her electronically at 9:55 am, on 3/27/2012, and not until later in the evening did an M.D., Dr. Christiason add his electronic signature."[14] Contrary to Gholston's assertion, at no place on the document does it state that Akkerman dictated or recorded the report. It simply states that Akkerman recorded Gholston's vital signs at 9:54 am on March 27, 2012.[15] Based on his electronic signature, the Court concludes that Dr. Christiason fully participated in the consultative examination of Gholston. Moreover, with regard to Douglas' consultative examination, Gholston offers no authority for the proposition that a consultative examiner must be an acceptable medical source. Gholston simply refers to an interpretation of a regulation promulgated by the Commissioner of Social Security

---

[12] *See* Administrative Record at 24-29 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

[13] *See Id.* at 620-21.

[14] Gholston's Brief (docket number 10) at 18-19.

[15] *See* Administrative Record at 621.

which states that if the purpose of the consultative examination is to establish the existence of a medically determinable impairment, then the consultative examiner must be an acceptable medical source.[16] The record demonstrates that Gholston was referred by DDS to Douglas for a generic disability examination, not for an examination to specifically establish the existence of a medically determinable impairment. Furthermore, the ALJ properly considered Douglas' opinions, and even though she is not an acceptable medical source, the ALJ gave her opinions "some" weight. Therefore, having reviewed the entire record, the Court finds that the ALJ fulfilled his duty to fully and fairly develop the record with regard to consultative examinations in this case. *See Cox*, 495 F.3d at 618. Accordingly, the Court concludes that Gholston's argument on this issue is without merit.

### 3. *Hypothetical Question*

Gholston argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not contemplate all of his functional limitations, and was based on a faulty RFC assessment. Gholston also argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the DOT. Finally, Gholston argues that the ALJ failed to sustain his burden at the fifth step of the five-step sequential test, to show that there were a significant number of jobs in the national economy that Gholston was capable of performing. Gholston concludes that this matter should be remanded for proper vocational expert testimony.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v.*

---

[16] Gholston's Brief (docket number 10) at 20.

*Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Gholston's testimony in assessing Gholston's RFC.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical questions posed to the vocational expert by the ALJ were based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible).

Social Security Regulation ("SSR") 00-4p explains that in making disability determinations, the Social Security Administration relies "primarily on the DOT for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 at *2. SSR 00-4p further provides that:

> Occupational evidence provided by a VE [(vocational expert)] . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support

---

[17] *See* Administrative Record at 24-29; *see also* the Court's discussion of the ALJ's RFC assessment in section *V.B.1* of this decision.

> a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id.*; *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (An ALJ is "required not only to ask the expert whether there is a conflict, but also to obtain an explanation for any such conflict."); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) ("When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls."). While SSR 00-4p clearly provides that occupation evidence provided by a vocational expert should be consistent with occupational information contained in the DOT, the Court is cautioned not to read too much into this Social Security regulation. In *Wheeler v. Apfel*, 224 F.3d 891 (8th Cir. 2000), the Eighth Circuit explained that:

> 'reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.' The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.

*Id.* at 897 (quoting *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997)).

Here, the ALJ sought testimony from a vocational expert at the administrative hearing. In questioning the vocational expert, both the ALJ and Gholston's attorney inquired as to any inconsistency between the DOT and Gholston's limited use of his non-

dominant, left upper extremity. At the administrative hearing, the vocational expert, Gholston's attorney, the ALJ engaged in the following colloquy:

| | |
|---|---|
| ATTY: | . . . How much use of the bilateral upper extremities would be required [for the addresser position]? |
| VE: | Well it's defined as frequent for the -- it doesn't distinguish as far as, you know, the bilaterally, it just says frequent use, for handling for example or fine manipulation. |
| ALJ: | All right.  So, so the question I gave on hypotheticals two and three I said only occasional gross. |
| VE: | With the -- my understanding was the minor non-dominant. |
| ALJ: | That's correct. |
| VE: | In my opinion a person could still perform that job with my understanding of the limitation. |
| ATTY: | Does your opinion differ from the description contained in the <u>DOT</u> with respect to that point? |
| VE: | Well, it doesn't -- not to the point that it doesn't clarify that in the <u>Dictionary of Occupational Titles</u> and its supplements. |
| ATTY: | Same question with respect to the document preparer position.  To what extent does that position require the use of bilateral upper extremities? |
| VE: | Okay.  Again it would be the frequent handle again, like fine manipulation.  But it doesn't distinguish, you know, with both hands.  In my opinion a person that could frequently use their dominant hand, you know, would be able to perform that job as well.  But it doesn't distinguish in the <u>Dictionary of Occupational Titles</u> and its supplements. |
| ATTY: | You say you're -- you don't believe your opinion differs from the <u>DOT</u> but would you say that |

you're supplementing information that's not in
                                   the <u>DOT</u>?
              VE:                  Well I guess as I'm understanding or I would be
                                   utilizing, yes, my opinion as well.

(Administrative Record at 78-79.) The Court finds that such explanations from the vocational expert are consistent with *Wheeler*, where the Eighth Circuit stated "'reliance on the DOT as a definitive authority on job requirements is misplaced, however, for DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range. . . .' In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." 224 F.3d at 897 (quoting *Hall*, 109 F.3d at 1259); *see also Hillier v. Social Security Administration*, 486 F.3d 359, 366-67 (8th Cir. 2007) (same).

Finally, the Social Security Regulations provide that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet[.]" 20 C.F.R. § 404.1566(b); *see also* 20 C.F.R. § 416.966(b) (same); *Weiler v. Apfel*, 179 F.3d 1107, 1110 (8th Cir. 1999) (providing that on review a court is not required to compare the claimant's RFC to every job recommended by the vocational expert). While the vocational expert testified that there are only 550 document preparer and addresser positions in Iowa, the Eighth Circuit has found that an occupation with 200 positions is adequate for meeting the requirement at step five of the disability determination, that there are a "significant number" of jobs in the national economy which a claimant can perform. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *see also Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (providing 330 jobs constituted a sufficient number of jobs in the national economy). Accordingly, the Court finds that the ALJ did not err at the fifth step of the five-step sequential test, and properly determined that there were a significant number of jobs in the national economy that Gholston was capable of performing.

In summary, the Court finds that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985. The ALJ properly followed and addressed the requirements of SSR-004p. Specifically, the ALJ resolved any conflicts between the vocational expert's testimony and the DOT, by eliciting reasonable explanations from the vocational expert for any apparent inconsistencies with the DOT. *See Renfrow*, 496 F.3d at 921. Lastly, the Court finds that the ALJ did not err at the fifth step of the five-step sequential test, and properly determined that there were a significant number of jobs in the national economy that Gholston was capable of performing. *See Welsh*, 765 F.3d at 930; *Johnson*, 108 F.3d at 180. Accordingly, the Court determines that the ALJ's disability determination is not flawed, and the ALJ properly relied on the vocational expert testimony in this matter. *See Wagner*, 499 F.3d at 854. Therefore, the Court determines that the ALJ's hypothetical questions were sufficient. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

I find that the ALJ fully and fairly developed the record in this matter, made a proper RFC assessment for Gholston, and provided proper hypothetical questions to the vocational expert. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and **DISMISS** with prejudice Plaintiff's Complaint (docket number 3) filed on October 7, 2014.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this _11th_ day of June, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA